**Reversed and Remanded Memorandum Opinion filed February 10, 2015.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-13-00642-CR

_____

**THOMAS ANDREWS EVANS II, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 2
Fort Bend County, Texas
Trial Court Cause No. 12-CCR-159784**

## M E M O R A N D U M   O P I N I O N

Appellant Thomas Andrews Evans II was charged with driving while intoxicated. After the trial court denied his motion to suppress, Evans pleaded no contest to the charge. Evans appeals his conviction and alleges that the trial court erred in denying his motion to suppress the evidence obtained from a warrantless nonconsensual blood draw because his blood was drawn in violation of the Fourth Amendment. We reverse and remand.

**BACKGROUND**

On March 26, 2011, Department of Public Safety Trooper Eric Robinson was dispatched to Highway 99 northbound at Cinco Ranch in Fort Bend County, Texas. Trooper Robinson arrived at the scene of the accident at approximately 2:30 a.m. Evans, two Fort Bend County deputies, and the wrecker drivers were already present at the scene. Trooper Robinson spoke with Deputy Aquino, who informed him that Evans had been driving a Toyota Tundra and struck a Chevrolet Traverse with two people inside. The collision caused the Chevrolet Traverse to strike the median in the road and flip over several times. The two occupants of the Chevrolet Traverse were transported to Memorial Hermann Hospital in Katy to be treated for bodily injuries and were not present at the scene when Trooper Robinson arrived. The damage to the vehicles was extensive and neither vehicle was capable of being driven from the scene of the accident. Another DPS trooper arrived later to assist in monitoring traffic.

When Trooper Robinson arrived, Evans was sitting in the back of a patrol car. Trooper Robinson began asking Evans questions to investigate the cause of the accident. In response to Trooper Robinson's questioning, Evans stated that he had been coming from a friend's bar and admitted to drinking two to three beers. Trooper Robinson observed that Evans smelled of alcohol, had slurred speech, and had red and glassy eyes. Trooper Robinson administered one field sobriety test and determined that Evans was under the influence of alcohol. Evans refused to participate in the other field sobriety tests. Trooper Robinson arrested Evans and transported him to Memorial Hermann Hospital.

At the hospital, Trooper Robinson played Evans an audio recording of the

statutory DWI warning contained in the DIC−24 form[1] and requested that he provide a voluntary specimen to test for intoxication. Pursuant to the mandatory blood draw provision, Trooper Robinson was required to obtain a specimen of Evans's blood. *See* Tex. Transp. Code § 724.012(b)(1)(C). Evans refused consent to the blood draw and a nurse drew Evans's blood at 4:40 a.m. Trooper Robinson did not obtain a warrant for the blood draw.

Evans was charged with operating a motor vehicle in a public place while intoxicated. *See* Tex. Penal Code § 49.04(a). Evans filed a motion to suppress the evidence obtained from the blood draw. After conducting a hearing, the trial court entered an order denying the motion on June 26, 2013.

Trooper Robinson was the only witness to testify at the suppression hearing. Trooper Robinson testified that he did not attempt to obtain a search warrant and had never previously gotten a search warrant for a blood draw. Although he testified that he did not know whether a magistrate was on call at the time,[2] he estimated that it would have only taken one hour to get a warrant. Trooper Robinson admitted that "had [he] made the decision to prepare a probable cause affidavit and fax it to a judge who was on call, that [he] had sufficient time to do that in this investigation." When asked why he did not attempt to get a warrant, Trooper Robinson testified that he was relying on the mandatory blood draw provision, which authorizes a nonconsensual blood draw when there is an accident and someone other than the arrestee is taken to the hospital for injuries. *See* Tex. Transp. Code § 724.012(b)(1)(C). On April 30, 2014, the trial court issued findings

---

[1] The DIC−24 form is a standard form commonly used by the DPS to request breath or blood specimens from suspected intoxicated drivers. *See Martin v. Dep't of Pub. Safety*, 964 S.W.2d 772, 773 (Tex. App.—Austin 1998, no pet.). The form sets forth the required warnings from Section 724.015 of the Texas Transportation Code. *See* Tex. Transp. Code § 724.015.

[2] In his findings of fact, the trial judge stated that "[t]he Court's personal recollection is that Fort Bend County does not have a 24-hour magistrate on call to sign blood search warrants."

3

of fact and conclusions of law, reaffirming its denial of the motion to suppress.

## STANDARD OF REVIEW

We review a trial court's denial of a motion to suppress under a bifurcated standard. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion. *Id*. At the suppression hearing, the trial court is the sole finder of fact and is free to believe or disbelieve any or all of the testimony presented. *Wiede v. State*, 214 S.W.3d 17, 24−25 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's factual findings are based on an evaluation of credibility and demeanor. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010).

Additionally, we review de novo the trial court's application of the law of search and seizure to the trial court's express or implied determination of historical facts. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We review de novo the trial court's application of the law to those facts. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). We must view the evidence in the light most favorable to the trial court's ruling. *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011). The trial court's ruling will be sustained if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003).

## ANALYSIS OF APPELLANT'S ISSUE

In eight issues on appeal, Evans contends that the trial court erred in denying his motion to suppress. We limit our discussion to whether the warrantless nonconsensual blood draw violated Evans's rights under the Fourth Amendment

because we find this issue dispositive.[3] Evans alleges that the blood draw violated the Fourth Amendment because it does not meet any exception to the Fourth Amendment warrant requirement. We agree.

## I.     The Fourth Amendment

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "Although the text of the Fourth Amendment does not specify when a search warrant must be obtained, [the Supreme Court of the United States] has inferred that a warrant must generally be secured." *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 134 S. Ct. 2473, 2482 (2014). "The exceptions to the rule that a search must rest upon a search warrant have been jealously and carefully drawn . . . ." *Jones v. United States*, 357 U.S. 493, 499 (1958). These exceptions include voluntary consent to search, search under exigent circumstances, and search incident to arrest. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003).

---

[3] Although Evans also contends that the mandatory blood draw provision is unconstitutional, we need not decide this issue because it is not absolutely necessary to deciding this case. *See Douds v. State*, 434 S.W.3d 842, 860 (Tex. App.—Houston [14th Dist.] 2014, pet. granted) (en banc, op. on reh'g.) (declining to decide the constitutionality of the mandatory blood draw provision because the statute did not play a role in the court's Fourth Amendment analysis); *see also Leal v. State*, --- S.W.3d ---, No. 14-13-00208-CR, 2014 WL 5898299, at *4 n.3 (Tex. App.—Houston [14th Dist.] Nov. 13, 2014, no pet.) (quoting *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 909 (Tex. Crim. App. 2011)) ("The constitutionality of a statute is not to be determined in any case unless such a determination is absolutely necessary to decide the case in which the issue is raised.").

When a defendant alleges that a search or seizure violates the Fourth Amendment, he must produce some evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). To satisfy this burden, the defendant must establish that the search or seizure occurred without a warrant. *Id.* Here, it is undisputed that the State obtained Evans's blood without securing a warrant. Thus, the burden shifts to the State to prove that the warrantless seizure was reasonable. *Id.* A warrantless search or seizure is reasonable only if it falls within a specific exception to the Fourth Amendment warrant requirement. *Riley*, 134 S. Ct. at 2482.

## II.  Warrantless Blood Draw

Evans contends that the trial court erred in denying his motion to suppress because the State cannot show that an exception to the Fourth Amendment warrant requirement applies. In response, the State argues that the warrantless seizure was reasonable because (1) Evans impliedly consented to the blood draw, and in the alternative, (2) exigent circumstances justified the warrantless seizure.[4]

### A.  Implied Consent

The State asserts that the blood draw was reasonable because Evans impliedly consented to having his blood drawn. More specifically, the State asks "that this Court consider the issue of whether the implied consent contained in the Texas Transportation Code authorizes a warrantless blood draw deriving from that implied consent." The State relies on Section 724.011(a) of the Texas

---

[4] The State also argues that the evidence should not be suppressed because the good faith exception to the federal exclusionary rule applies. Because this argument contradicts our decision in *Douds*, the State asks "this Court not to apply that holding here, or to reexamine that holding in light of the posture in which it places law enforcement and the lack of effect it would have in deterring police misconduct." We decline to revisit our holding in *Douds* and hold that the good faith exception to the federal exclusionary rule does not apply. *See Douds*, 434 S.W.3d at 861−62.

Transportation Code, which states, in relevant part:

> If a person is arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in a public place . . . the person is deemed to have consented . . . to submit to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration or the presence in the person's body of a controlled substance, drug, dangerous drug, or other substance.

The State asserts that this provision establishes that the seizure was reasonable because it provides that Evans impliedly consented to having his blood drawn. Here, however, Evans expressly refused consent to having his blood drawn. The implied consent statute does not authorize a blood draw, without his consent, unless the mandatory blood draw provisions of Section 724.012(b) are implicated. *See Cole v. State*, --- S.W.3d ---, No. 06-13-00179-CR, 2014 WL 7183859, at *4 (Tex. App.—Texarkana Dec. 18, 2014, no pet.); *see also* Tex. Transp. Code § 724.013 ("Except as provided by Section 724.012(b), a specimen may not be taken if a person refuses to submit to the taking of a specimen designated by a peace officer.").

The mandatory blood draw provision provides that, in the absence of consent, an officer is required to obtain a sample of breath or blood when an individual other than the arrestee has suffered bodily injury and has been transported to a hospital or other medical facility for medical treatment. *See* Tex. Transp. Code 724.012(b)(1)(C). The State, in essence, is arguing that the mandatory blood draw provision should constitute a *per se* exception to the Fourth Amendment warrant requirement.

The Court of Criminal Appeals recently rejected this argument in *State v. Villarreal. See* --- S.W.3d ---, No. PD-0306-14, 2014 WL 6734178, at *11 (Tex. Crim. App. Nov. 26, 2014). Similarly, the State in *Villarreal* argued that the

7

implied consent and mandatory blood draw provisions should be upheld as categorically reasonable under the consent exception to the warrant requirement. *Id*. at *10. The Court of Criminal Appeals held that the mandatory blood draw provisions, by themselves, do not form a *per se* exception to the Fourth Amendment warrant requirement. *See id*. at *14. Under *Villarreal*, an officer is required to obtain a search warrant to draw a defendant's blood, unless he can show that an exception to the warrant requirement applies. *Id*. at *8. *Villarreal* establishes that consent provided by the implied consent and mandatory blood draw provisions cannot be the exception when that consent is expressly refused. *Id*. at *11 ("It would be wholly inconsistent with these principles [of the Fourth Amendment] to uphold the warrantless search of a suspect's blood on the basis of consent when a suspect has, as in the present case, expressly and unequivocally refused to submit to the search."). Implied consent that has been revoked by a defendant cannot serve as a substitute for the free and voluntary consent required by the Fourth Amendment. *Id*. Instead, reasonableness must be judged under a totality of the circumstances approach. *Id*. at *8 ("Given this totality-of-the-circumstances approach, for the most part, 'per se rules are inappropriate in the Fourth Amendment context.'").

In light of the Court of Criminal Appeals' holding in *Villarreal*, we reject the State's argument that the implied consent and mandatory blood draw provisions constitute an exception to the warrant requirement. Because Evans refused consent to the blood draw, the State cannot prove that the consent exception to the warrant requirement applies.[5]

---

[5] The State also argues that the warrantless seizure did not violate the Fourth Amendment because Trooper Robinson's misinterpretation of the mandatory blood draw provision was a reasonable mistake of law. The State relies on *Heien v. North Carolina*, in which an officer pulled a vehicle over because one brake light was out and he believed the statute at issue

## B.    Exigent Circumstances

Evans further asserts that the blood draw violated the Fourth Amendment because there were no exigent circumstances to justify the warrantless seizure. We agree.

Courts recognize that a warrantless search and seizure can be reasonable "[w]here there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime." *Douds*, 434 S.W.3d at 850 (quoting *Roaden v. Kentucky*, 413 U.S. 496, 505 (1973)). Exigent circumstances generally fall within one or more of three categories: (1) providing aid or assistance to persons whom law enforcement reasonably believes are in need of assistance; (2) protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous; and (3) preventing the destruction of evidence or contraband. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007).

Under *Missouri v. McNeely*, to determine whether an officer faced an emergency or whether exigent circumstances existed to justify a warrantless seizure in a DWI investigation, we must consider the totality of the circumstances and analyze the facts on a case-by-case basis. --- U.S. ---, 133 S. Ct. 1552, 1558−59 (2013). *McNeely* requires an officer to identify factors that suggest he faced an emergency or unusual delay in obtaining a warrant. *See id.* at 1567. The court further explained that "[i]n those drunk-driving investigations where police

required two working brake lights. 135 S. Ct. 530, 534 (2014). During the search, the officer found cocaine in the vehicle. *Id.* The trial court later held that the statute only required one working brake light. *Id.* The Supreme Court held that the search was reasonable because reasonable suspicion required for a traffic stop can rest on a reasonable mistake of law. *Id.* at 536. We reject the State's argument because Trooper Robinson did not misinterpret the mandatory blood draw provision. Instead, Trooper Robinson drew Evans's blood in accordance with the exact language of the mandatory blood draw provision. Because Trooper Robinson did not misinterpret the statute, there can be no mistake of law defense.

officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment *mandates* that they do so." *Id.* at 1561 (emphasis added).

We apply an objective standard of reasonableness to determine whether a warrantless search was justified, and we take into account the facts and circumstances known to the police at the time of the warrantless search. *Colburn v. State*, 966 S.W.2d 511, 519 (Tex. Crim. App. 1998); *see also Douds*, 434 S.W.3d at 854 ("The relevant inquiry is whether, given the facts and circumstances known to police at the time, it would be objectively reasonable for an officer to conclude that taking the time necessary to obtain a warrant before drawing a blood sample would significantly undermine the efficacy of a blood alcohol test.").

The State contends that exigent circumstances existed because obtaining a warrant would have significantly delayed the blood draw process. In support of its contention, the State provides the following factors: (1) the nature of the accident; (2) the time it took to draw Evans's blood without a warrant; and (3) the trial judge's personal knowledge that there is not a magistrate is on call twenty-four hours in Fort Bend County.

In *Douds*, this court held that evidence of an accident investigation, by itself, does not demonstrate exigent circumstances. *Id.* In that case, two vehicles were involved in an accident and one passenger was transported to the hospital. *Id.* at 845. The driver was suspected of being under the influence of alcohol and his blood was drawn approximately two hours after the officer arrived at the scene. *Id.* at 845−46. The court held that the State did not prove exigent circumstances existed to justify the warrantless blood draw because an accident investigation combined with the rapid dissipation of blood alcohol, without more, did not demonstrate that the officer faced any emergency or undue delay in obtaining a

10

warrant. *Id.* at 854−55. We hold that the facts of *Douds* are analogous to the present case and conclude that the State cannot show obtaining a warrant was impractical.

The record does not reflect any facts to support the State's argument that obtaining a warrant would have significantly delayed the blood draw process. *See id.* at 855 (holding that the state could not show it was impractical for the police to obtain a warrant in the two-hour time span between when the officer arrived to the scene and when the defendant's blood was drawn). To the contrary, Trooper Robinson testified at the suppression hearing that he believed there was sufficient time to obtain a warrant if he attempted to do so. The only reason that Trooper Robinson did not attempt to obtain a warrant is because he was relying on the mandatory blood draw provision of Section 724.012. *See* Tex. Transp. Code § 724.012(b)(1)(C).

When Trooper Robinson arrived at the scene, the two occupants of the other vehicle had already been transported to the hospital. There were also two Fort Bend County deputies and one DPS trooper at the scene assisting in the investigation who could have helped secure a warrant. Furthermore, the State cannot show that further delay in obtaining a warrant past 4:40 a.m. would have significantly undermined the efficacy of the blood alcohol test. *See Douds*, 434 S.W.3d at 855 ("Nor is there evidence that any 'further delay in order to secure a warrant' beyond 4:45 a.m. 'would have threatened the destruction of evidence' that 'is lost gradually and relatively predictably.'").

Although Trooper Robinson was unfamiliar with the procedures required to obtain a warrant, this in itself, is not an exigent circumstance. *See State v. Anderson*, 445 S.W.3d 895, 903 (Tex. App.—Beaumont 2014, no pet.) ("Some examples of exigency include hot pursuit, entering a building to put out a fire, entering a home to aid an occupant, or, in some contexts, preventing destruction of

11

evidence."). The State also argues that the trial judge's personal recollection that Fort Bend County does not generally have a magistrate on-call is evidence that Trooper Robinson would have faced an unusual delay in obtaining a warrant. Our inquiry, however, must focus on the facts and circumstances known to Trooper Robinson at the time of the accident. *Douds*, 434 S.W.3d at 854. Trooper Robinson testified that he did not know whether there was a magistrate on-call at the time of the accident. The trial judge's personal knowledge cannot establish whether a magistrate was available on the night of the accident.

The State further argues that the nature of the accident created an exigent circumstance because the two vehicles could not be driven and two people were transported to the hospital. We decline to examine the nature of the accident because the severity of the accident is not the focus of our inquiry. *See id*. at 853 (stating that "making courts responsible for grading the severity of accidents would lead inevitably to inconsistent outcomes"). Instead, the focus is on whether Trooper Robinson objectively believed obtaining a warrant would delay the blood draw process. *See id*. at 854. The above facts, taken together, do not demonstrate that Trooper Robinson faced any emergency or unusual delay. *See McNeely*, 133 S. Ct. at 1567. Although all findings of historical fact supported by the record must be implied in favor of the trial court's ruling that the blood draw should not be suppressed, whether those facts meet the legal standard of exigent circumstances is a legal question that we review de novo. *Douds*, 434 S.W.3d at 855. Because the accident investigation, by itself, is not an exigent circumstance and the record reflects that Trooper Robinson believed he had time to secure a warrant, we hold that the State cannot show exigent circumstances existed to justify the warrantless seizure.

12

## CONCLUSION

We reverse and remand for further proceedings consistent with this opinion.


/s/   Ken Wise
Justice


Panel consists of Justices McCally, Brown, and Wise.
Do Not Publish — TEX. R. APP. P. 47.2(b).