Chief Justice ROBERTSdelivered the opinion of the Court.
The Fourth Amendment prohibits "unreasonable searches and seizures." Under this standard, a search or seizure may be permissible even though the justification for the action includes a reasonable factual mistake. An officer might, for example, stop a motorist for traveling alone in a high-occupancy vehicle lane, only to discover upon approaching the car that two children are slumped over asleep in the back seat. The driver has not violated the law, but neither has the officer violated the Fourth Amendment.
But what if the police officer's reasonable mistake is not one of fact but of law? In this case, an officer stopped a vehicle because one of its two brake lights was out, but a court later determined that a single working brake light was all the law required. The question presented is whether such a mistake of law can nonetheless give rise to the reasonable suspicion necessary to uphold the seizure under the Fourth Amendment. We hold that it can. Because the officer's mistake about the brake-light law was reasonable, the stop in this case was lawful under the Fourth Amendment.
I
On the morning of April 29, 2009, Sergeant Matt Darisse of the Surry County Sheriff's Department sat in his patrol car near Dobson, North Carolina, observing northbound traffic on Interstate 77. Shortly before 8 a.m., a Ford Escort passed by. Darisse thought the driver looked "very stiff and nervous," so he pulled onto the interstate and began following the Escort. A few miles down the road, the Escort braked as it approached a slower vehicle, but only the left brake light came on. Noting the faulty right brake light, Darisse activated his vehicle's lights and pulled the Escort over. App. 4-7, 15-16.
Two men were in the car: Maynor Javier Vasquez sat behind the wheel, and petitioner Nicholas Brady Heien lay across the rear seat. Sergeant Darisse explained to Vasquez that as long as his license and registration checked out, he would receive only a warning ticket for the broken brake light. A records check revealed no problems with the documents, and Darisse gave Vasquez the warning ticket. But Darisse had become suspicious during the course of the stop-Vasquez appeared nervous, Heien remained lying down the entire time, and the two gave inconsistent answers about their destination. Darisse asked Vasquez if he would be willing to answer some questions. Vasquez assented, and Darisse asked whether the men were transporting various types of contraband. Told no, Darisse asked whether he could search the Escort. Vasquez said he had no objection, but told Darisse he should ask Heien, because Heien owned the car. Heien gave his consent, and Darisse, aided by a fellow officer who had since arrived, began a thorough search of the vehicle. In the side compartment of a duffle bag, Darisse found a sandwich bag containing cocaine. The officers arrested both men.
*535 366 N.C. 271, 272-273, 737 S.E.2d 351, 352-353 (2012); App. 5-6, 25, 37.
The State charged Heien with attempted trafficking in cocaine. Heien moved to suppress the evidence seized from the car, contending that the stop and search had violated the Fourth Amendment of the United States Constitution. After a hearing at which both officers testified and the State played a video recording of the stop, the trial court denied the suppression motion, concluding that the faulty brake light had given Sergeant Darisse reasonable suspicion to initiate the stop, and that Heien's subsequent consent to the search was valid. Heien pleaded guilty but reserved his right to appeal the suppression decision. App. 1, 7-10, 12, 29, 43-44.
The North Carolina Court of Appeals reversed. 214 N.C.App. 515, 714 S.E.2d 827 (2011). The initial stop was not valid, the court held, because driving with only one working brake light was not actually a violation of North Carolina law. The relevant provision of the vehicle code provides that a car must be
"equipped with a stop lamp on the rear of the vehicle. The stop lamp shall display a red or amber light visible from a distance of not less than 100 feet to the rear in normal sunlight, and shall be actuated upon application of the service (foot) brake. The stop lamp may be incorporated into a unit with one or more other rear lamps." N.C. Gen.Stat. Ann. § 20-129(g) (2007).
Focusing on the statute's references to "a stop lamp" and "[t]he stop lamp" in the singular, the court concluded that a vehicle is required to have only one working brake light-which Heien's vehicle indisputably did. The justification for the stop was therefore "objectively unreasonable," and the stop violated the Fourth Amendment. 214 N.C.App., at 518-522, 714 S.E.2d, at 829-831.
The State appealed, and the North Carolina Supreme Court reversed. 366 N.C. 271, 737 S.E.2d 351. Noting that the State had chosen not to seek review of the Court of Appeals' interpretation of the vehicle code, the North Carolina Supreme Court assumed for purposes of its decision that the faulty brake light was not a violation. Id.,at 275, 737 S.E.2d, at 354. But the court concluded that, for several reasons, Sergeant Darisse could have reasonably, even if mistakenly, read the vehicle code to require that both brake lights be in good working order. Most notably, a nearby code provision requires that "all originally equipped rear lamps" be functional. Id.,at 282-283, 737 S.E.2d, at 358-359(quoting N.C. Gen.Stat. Ann. § 20-129(d)). Because Sergeant Darisse's mistaken understanding of the vehicle code was reasonable, the stop was valid. "An officer may make a mistake, including a mistake of law, yet still act reasonably under the circumstances.... [W]hen an officer acts reasonably under the circumstances, he is not violating the Fourth Amendment." Id.,at 279, 737 S.E.2d, at 356.
The North Carolina Supreme Court remanded to the Court of Appeals to address Heien's other arguments for suppression (which are not at issue here). Id.,at 283, 737 S.E.2d, at 359. The Court of Appeals rejected those arguments and affirmed the trial court's denial of his motion to suppress. --- N.C.App. ----, 741 S.E.2d 1 (2013). The North Carolina Supreme Court affirmed in turn. 367 N.C. 163, 749 S.E.2d 278 (2013). We granted certiorari. 572 U.S. ----, 134 S.Ct. 1872, 188 L.Ed.2d 910 (2014).
II
The Fourth Amendment provides:
"The right of the people to be secure in their persons, houses, papers, and *536 effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
A traffic stop for a suspected violation of law is a "seizure" of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment. Brendlin v. California,551 U.S. 249, 255-259, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). All parties agree that to justify this type of seizure, officers need only "reasonable suspicion"-that is, "a particularized and objective basis for suspecting the particular person stopped" of breaking the law. Prado Navarette v. California,572 U.S. ----, ----, 134 S.Ct. 1683, 1687-88, 188 L.Ed.2d 680 (2014)(internal quotation marks omitted). The question here is whether reasonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition. We hold that it can.
As the text indicates and we have repeatedly affirmed, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.' " Riley v. California,573 U.S. ----, ----, 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430 (2014)(some internal quotation marks omitted). To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them "fair leeway for enforcing the law in the community's protection." Brinegar v. United States,338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). We have recognized that searches and seizures based on mistakes of fact can be reasonable. The warrantless search of a home, for instance, is reasonable if undertaken with the consent of a resident, and remains lawful when officers obtain the consent of someone who reasonably appears to be but is not in fact a resident. See Illinois v. Rodriguez,497 U.S. 177, 183-186, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). By the same token, if officers with probable cause to arrest a suspect mistakenly arrest an individual matching the suspect's description, neither the seizure nor an accompanying search of the arrestee would be unlawful. See Hill v. California,401 U.S. 797, 802-805, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971). The limit is that "the mistakes must be those of reasonable men." Brinegar,supra,at 176, 69 S.Ct. 1302.
But reasonable men make mistakes of law, too, and such mistakes are no less compatible with the concept of reasonable suspicion. Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground. Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: the facts are outside the scope of the law. There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law.
The dissent counters that our cases discussing probable cause and reasonable suspicion, most notably Ornelas v. United States,517 U.S. 690, 696-697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), have contained "scarcely a peep" about mistakes of law. Post,at 542 - 543 (opinion of SOTOMAYOR, J.). It would have been surprising, of course, if they had, since none of those cases involved a mistake of law.
Although such recent cases did not address mistakes of law, older precedents did. In fact, cases dating back two centuries *537 support treating legal and factual errors alike in this context. Customs statutes enacted by Congress not long after the founding authorized courts to issue certificates indemnifying customs officers against damages suits premised on unlawful seizures. See, e.g.,Act of Mar. 2, 1799, ch. 22, § 89, 1 Stat. 695-696. Courts were to issue such certificates on a showing that the officer had "reasonable cause"-a synonym for "probable cause"-for the challenged seizure. Ibid.; see Stacey v. Emery,97 U.S. 642, 646, 24 L.Ed. 1035 (1878); United States v. Riddle,5 Cranch 311, 3 L.Ed. 110 (1809). In United States v. Riddle,a customs officer seized goods on the ground that the English shipper had violated the customs laws by preparing an invoice that undervalued the merchandise, even though the American consignee declared the true value to the customs collector. Chief Justice Marshall held that there had been no violation of the customs law because, whatever the shipper's intention, the consignee had not actually attempted to defraud the Government. Nevertheless, because "the construction of the law was liable to some question," he affirmed the issuance of a certificate of probable cause: "A doubt as to the true construction of the lawis as reasonable a cause for seizure as a doubt respecting the fact." Id.,at 313.
This holding-that reasonable mistakes of law, like those of fact, would justify certificates of probable cause-was reiterated in a number of 19th-century decisions. See, e.g., The Friendship,9 F.Cas. 825, 826 (No. 5,125)(C.C.D.Mass.1812) (Story, J.); United States v. The Reindeer,27 F.Cas. 758, 768 (No. 16,145) (C.C.D.R.I.1848); United States v. The Recorder,27 F.Cas. 723 (No. 16,130) (C.C.S.D.N.Y.1849). By the Civil War, there had been "numerous cases in which [a] captured vessel was in no fault, and had not, under a true construction of the law, presented even ground of suspicion, and yet the captor was exonerated because he acted under an honest mistake of the law." The La Manche,14 F.Cas. 965, 972 (No. 8,004)(D.Mass.1863).
Riddleand its progeny are not directly on point. Chief Justice Marshall was not construing the Fourth Amendment, and a certificate of probable cause functioned much like a modern-day finding of qualified immunity, which depends on an inquiry distinct from whether an officer has committed a constitutional violation. See, e.g.,Carroll v. Carman, ante,at 7, --- U.S. ----, 135 S.Ct. 348, 352, --- L.Ed.2d ---- (2014)(per curiam). But Chief Justice Marshall was nevertheless explaining the concept of probable cause, which, he noted elsewhere, "in all cases of seizure, has a fixed and well known meaning. It imports a seizure made under circumstances which warrant suspicion."Locke v. United States,7 Cranch 339, 348, 3 L.Ed. 364 (1813). We have said the phrase "probable cause" bore this "fixed and well known meaning" in the Fourth Amendment, see Brinegar, supra,at 175, and n. 14, 69 S.Ct. 1302, and Riddleillustrates that it encompassed suspicion based on reasonable mistakes of both fact and law. No decision of this Court in the two centuries since has undermined that understanding.*
*538 The contrary conclusion would be hard to reconcile with a much more recent precedent. In Michigan v. DeFillippo,443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979), we addressed the validity of an arrest made under a criminal law later declared unconstitutional. A Detroit ordinance that authorized police officers to stop and question individuals suspected of criminal activity also made it an offense for such an individual "to refuse to identify himself and produce evidence of his identity." Id.,at 33, 99 S.Ct. 2627. Detroit police officers sent to investigate a report of public intoxication arrested Gary DeFillippo after he failed to identify himself. A search incident to arrest uncovered drugs, and DeFillippo was charged with possession of a controlled substance. The Michigan Court of Appeals ordered the suppression of the drugs, concluding that the identification ordinance was unconstitutionally vague and that DeFillippo's arrest was therefore invalid. Id.,at 34-35, 99 S.Ct. 2627.
Accepting the unconstitutionality of the ordinance as a given, we nonetheless reversed. At the time the officers arrested DeFillippo, we explained, "there was no controlling precedent that this ordinance was or was not constitutional, and hence the conduct observed violated a presumptively valid ordinance." Id.,at 37, 99 S.Ct. 2627. Acknowledging that the outcome might have been different had the ordinance been "grossly and flagrantly unconstitutional," we concluded that under the circumstances "there was abundant probable cause to satisfy the constitutional prerequisite for an arrest." Id.,at 37-38, 99 S.Ct. 2627.
The officers were wrong in concluding that DeFillippo was guilty of a criminal offense when he declined to identify himself. That a court only laterdeclared the ordinance unconstitutional does not change the fact that DeFillippo's conduct was lawful when the officers observed it. See Danforth v. Minnesota,552 U.S. 264, 271, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008). But the officers' assumption that the law was valid was reasonable, and their observations gave them "abundant probable cause" to arrest DeFillippo. 443 U.S., at 37, 99 S.Ct. 2627. Although DeFillippo could not be prosecuted under the identification ordinance, the search that turned up the drugs was constitutional.
Heien struggles to recast DeFillippoas a case solely about the exclusionary rule, not the Fourth Amendment itself. In his view, the officers' mistake of law resulted in a violation the Fourth Amendment, but suppression of the drugs was not the proper remedy. We did say in a footnote that suppression of the evidence found on DeFillippo would serve none of the purposes of the exclusionary rule. See id.,at 38, n. 3, 99 S.Ct. 2627. But that literally marginal discussion does not displace our express holding that the arrest was constitutionally valid because the officers had probable cause. See id.,at 40, 99 S.Ct. 2627. Nor, contrary to Heien's suggestion, did either United States v. Leon,468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), or Illinois v. Gates,462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), somehow erase that holding and transform DeFillippointo an exclusionary rule decision. See Brief for Petitioner 28-29. In Leon,we said DeFillippopaid "attention to the purposes underlying the exclusionary rule," but we also clarified that it did "not involv[e] the scope of the rule itself." 468 U.S., at 911-912, 104 S.Ct. 3405. As for Gates,only Justice White's separate opinion (joined by no other Justice) discussed DeFillippo,and it acknowledged that "DeFillippodid *539 not modify the exclusionary rule itself" but instead "upheld the validity of an arrest." 462 U.S., at 256, n. 12, 103 S.Ct. 2317(opinion concurring in judgment).
Heien is correct that in a number of decisions we have looked to the reasonableness of an officer's legal error in the course of considering the appropriate remedy for a constitutional violation, instead of whether there was a violation at all. See, e.g.,Davis v. United States,564 U.S. ----, ----, 131 S.Ct. 2419, 2429-30, 180 L.Ed.2d 285 (2011)(exclusionary rule); Illinois v. Krull,480 U.S. 340, 359-360, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987)(exclusionary rule); Wilson v. Layne,526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)(qualified immunity); Anderson v. Creighton,483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)(qualified immunity). In those cases, however, we had already found or assumed a Fourth Amendment violation. An officer's mistaken view that the conduct at issue did notgive rise to such a violation-no matter how reasonable-could not change that ultimate conclusion. See Brief for Respondent 29-31; Brief for United States as Amicus Curiae30, n. 3. Any consideration of the reasonableness of an officer's mistake was therefore limited to the separate matter of remedy.
Here, by contrast, the mistake of law relates to the antecedent question of whether it was reasonable for an officer to suspect that the defendant's conduct was illegal. If so, there was no violation of the Fourth Amendment in the first place. None of the cases Heien or the dissent cites precludes a court from considering a reasonable mistake of law in addressing that question. Cf. Herring v. United States,555 U.S. 135, 139, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009)(assuming a Fourth Amendment violation while rejecting application of the exclusionary rule, but noting that "[w]hen a probable-cause determination was based on reasonable but mistaken assumptions, the person subjected to a search or seizure has not necessarily been the victim of a constitutional violation").
Heien also contends that the reasons the Fourth Amendment allows some errors of fact do not extend to errors of law. Officers in the field must make factual assessments on the fly, Heien notes, and so deserve a margin of error. In Heien's view, no such margin is appropriate for questions of law: The statute here either requires one working brake light or two, and the answer does not turn on anything "an officer might suddenly confront in the field." Brief for Petitioner 21. But Heien's point does not consider the reality that an officer may "suddenly confront" a situation in the field as to which the application of a statute is unclear-however clear it may later become. A law prohibiting "vehicles" in the park either covers Segways or not, see A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 36-38 (2012), but an officer will nevertheless have to make a quick decision on the law the first time one whizzes by.
Contrary to the suggestion of Heien and amici,our decision does not discourage officers from learning the law. The Fourth Amendment tolerates only reasonablemistakes, and those mistakes-whether of fact or of law-must be objectivelyreasonable. We do not examine the subjective understanding of the particular officer involved. Cf. Whren v. United States,517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). And the inquiry is not as forgiving as the one employed in the distinct context of deciding whether an officer is entitled to qualified immunity for a constitutional or statutory violation. Thus, an officer can gain no Fourth Amendment advantage through a sloppy *540 study of the laws he is duty-bound to enforce.
Finally, Heien and amicipoint to the well-known maxim, "Ignorance of the law is no excuse," and contend that it is fundamentally unfair to let police officers get away with mistakes of law when the citizenry is accorded no such leeway. Though this argument has a certain rhetorical appeal, it misconceives the implication of the maxim. The true symmetry is this: Just as an individual generally cannot escape criminal liability based on a mistaken understanding of the law, so too the government cannot impose criminal liability based on a mistaken understanding of the law. If the law required two working brake lights, Heien could not escape a ticket by claiming he reasonably thought he needed only one; if the law required only one, Sergeant Darisse could not issue a valid ticket by claiming he reasonably thought drivers needed two. But just because mistakes of law cannot justify either the imposition or the avoidance of criminal liability, it does not follow that they cannot justify an investigatory stop. And Heien is not appealing a brake-light ticket; he is appealing a cocaine-trafficking conviction as to which there is no asserted mistake of fact or law.
III
Here we have little difficulty concluding that the officer's error of law was reasonable. Although the North Carolina statute at issue refers to "astop lamp," suggesting the need for only a single working brake light, it also provides that "[t]he stop lamp may be incorporated into a unit with one or more otherrear lamps." N.C. Gen.Stat. Ann. § 20-129(g)(emphasis added). The use of "other" suggests to the everyday reader of English that a "stop lamp" is a type of "rear lamp." And another subsection of the same provision requires that vehicles "have all originally equipped rear lamps or the equivalent in good working order," § 20-129(d), arguably indicating that if a vehicle has multiple "stop lamp[s]," all must be functional.
The North Carolina Court of Appeals concluded that the "rear lamps" discussed in subsection (d) do not include brake lights, but, given the "other," it would at least have been reasonable to think they did. Both the majority and the dissent in the North Carolina Supreme Court so concluded, and we agree. See 366 N.C., at 282-283, 737 S.E.2d, at 358-359; id.,at 283, 737 S.E.2d, at 359(Hudson, J., dissenting) (calling the Court of Appeals' decision "surprising"). This "stop lamp" provision, moreover, had never been previously construed by North Carolina's appellate courts. See id.,at 283, 737 S.E.2d, at 359(majority opinion). It was thus objectively reasonable for an officer in Sergeant Darisse's position to think that Heien's faulty right brake light was a violation of North Carolina law. And because the mistake of law was reasonable, there was reasonable suspicion justifying the stop.
The judgment of the Supreme Court of North Carolina is
Affirmed.
Justice KAGAN, with whom Justice GINSBURGjoins, concurring.
I concur in full in the Court's opinion, which explains why certain mistakes of law can support the reasonable suspicion needed to stop a vehicle under the Fourth Amendment. In doing so, the Court correctly emphasizes that the "Fourth Amendment tolerates only ... objectivelyreasonable" mistakes of law. Ante,at 539. And the Court makes clear that the inquiry into whether an officer's mistake of law counts as objectively reasonable "is not as forgiving as the one employed in the distinct context of deciding whether an officer *541 is entitled to qualified immunity." Ibid. I write separately to elaborate briefly on those important limitations.[1]
First, an officer's "subjective understanding" is irrelevant: As the Court notes, "[w]e do not examine" it at all. Ibid.That means the government cannot defend an officer's mistaken legal interpretation on the ground that the officer was unaware of or untrained in the law. And it means that, contrary to the dissenting opinion in the court below, an officer's reliance on "an incorrect memo or training program from the police department" makes no difference to the analysis. 366 N.C. 271, 284, 737 S.E.2d 351, 360 (2012)(Hudson, J., dissenting). Those considerations pertain to the officer's subjective understanding of the law and thus cannot help to justify a seizure.
Second, the inquiry the Court permits today is more demanding than the one courts undertake before awarding qualified immunity. See Tr. of Oral Arg. 51 (Solicitor General stating that the two tests "require essentially the opposite" showings); Brief for Respondent 31-32 (making a similar point). Our modern qualified immunity doctrine protects "all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd,563 U.S. ----, ----, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011)(quoting Malley v. Briggs,475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). By contrast, Justice Story's opinion in The Friendship,9 F.Cas. 825, 826 (No. 5,125)(C.C.D.Mass.1812) (cited ante, at 537), suggests the appropriate standard for deciding when a legal error can support a seizure: when an officer takes a reasonable view of a "vexata questio" on which different judges "h[o]ld opposite opinions." See Brief for United States as Amicus Curiae 26 (invoking that language). Or to make the same point without the Latin, the test is satisfied when the law at issue is "so doubtful in construction" that a reasonable judge could agree with the officer's view. The Friendship,9 F.Cas., at 826.
A court tasked with deciding whether an officer's mistake of law can support a seizure thus faces a straightforward question of statutory construction. If the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake. But if not, not. As the Solicitor General made the point at oral argument, the statute must pose a "really difficult" or "very hard question of statutory interpretation." Tr. of Oral Arg. 50. And indeed, both North Carolina and the Solicitor General agreed that such cases will be "exceedingly rare." Brief for Respondent 17; Tr. of Oral Arg. 48.
The Court's analysis of Sergeant Darisse's interpretation of the North Carolina law at issue here appropriately reflects these principles. As the Court explains, see ante,at 540, the statute requires every car on the highway to have "a stop lamp," in the singular.N.C. Gen.Stat. Ann. § 20-129(g) (2007). But the statute goes on to state that a stop lamp (or, in more modern terminology, brake light) "may be incorporated into a unit with one or more other *542 rear lamps," suggesting that a stop lamp itself qualifies as a rear lamp. Ibid. (emphasis added). And the statute further mandates that every car have "all originally equipped rear lamps ... in good working order." § 20-129(d)(emphasis added). The North Carolina Court of Appeals dealt with the statute's conflicting signals in one way (deciding that a brake light is not a rear lamp, and so only one needs to work); but a court could easily take the officer's view (deciding that a brake light isa rear lamp, and if a car comes equipped with more than one, as modern cars do, all must be in working order). The critical point is that the statute poses a quite difficult question of interpretation, and Sergeant Darisse's judgment, although overturned, had much to recommend it. I therefore agree with the Court that the traffic stop he conducted did not violate the Fourth Amendment.

The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See United States v. Detroit Timber & Lumber Co.,200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

I note in addition, as does the Court, that one kind of mistaken legal judgment-an error about the contours of the Fourth Amendment itself-can never support a search or seizure. See ante,at 539 ("An officer's mistaken view that" conduct does "notgive rise to" a Fourth Amendment violation, "no matter how reasonable," cannot change a court's "ultimate conclusion" that such a violation has occurred). As the Solicitor General has explained, mistakes about the requirements of the Fourth Amendment "violate the Fourth Amendment even when they are reasonable." Brief for United States as Amicus Curiae30, n. 3; see Brief for Respondent 29 (stating the same view).