J-S41041-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JEREMY MASON ARKINS, | |
| Appellant | No. 1872 MDA 2014 |

Appeal from the Judgment of Sentence November 3, 2014
in the Court of Common Pleas of York County
Criminal Division at No.: CP-67-CR-0001529-2013

BEFORE:  ALLEN, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JULY 06, 2015**

Appellant, Jeremy Mason Arkins, appeals from the judgment of sentence imposed following his stipulated bench trial and conviction[1] of four counts of driving under the influence (DUI).[2]  We affirm.

The trial court aptly summarized the facts of this case in its May 8, 2014 opinion as follows:

> Trooper Levi Dively of the Pennsylvania State Police was on patrol in Southern York County on December 12, 2012 at approximately 2:29 a.m.  At that time, he was following a red Nissan Sentra on Orr Road, where it intersects Lime Road (SR

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The stipulation followed the trial court's denial of Appellant's motion to suppress evidence.

[2] 75 Pa.C.S.A. §§ 3802(d)(1)(i), 3802(d)(1)(iii), 3802(d)(3), and 3802(e), respectively.

2028).  This is an intersection where Lime Road and Orr Road come together at a very close angle to each other.  It is designated to be posted as a three-way stop.  On the night in question, there was supposed to be a Stop sign posted on the right hand side of Lime Road where it intersects Orr Road, as well as a second Stop sign posted on the left hand side of Lime Road where it intersects Orr Road.

Brian Reigart of the Pennsylvania Department of Transportation [(PennDOT)] testified at the [suppression] hearing.  Mr. Reigart indicated that this was an intersection where the Stop signs are frequently knocked down or removed by vandals.  Trooper Dively testified that on December 12, 2012 at 2:29 A.M., the red Nissan Sentra driven by [Appellant] proceeded through the intersection of Lime Road and Orr Road without stopping.  [The officer stopped Appellant and noticed an odor of alcohol coming from him.  (**See** Stipulation 9/18/14, at 1-2, ¶¶ 2-3)].  The officer testified that there was a Stop sign posted on the left hand side of the road facing the line of travel of the [Appellant], which signaled to motorists traveling on Lime Road that they should stop before proceeding onto Orr Road.  The officer testified that he did not notice a Stop sign posted on the right hand side of the road.  Based on the testimony of Trooper Dively not noticing a Stop sign posted on the right hand side of the intersection in the direction of travel, as well as the testimony of Mr. Reigart that the Stop sign was frequently knocked down, removed or vandalized at that location, the [trial c]ourt [found] that on the night in question there was a Stop sign posted on the left hand side of the intersection but not on the right hand side of the intersection.  The [c]ourt [found] that [Appellant] proceeded through the intersection without stopping for the Stop sign that was posted on the left hand side of the intersection.  The Trooper testified at the hearing that the only reason for the traffic stop was [Appellant's] failure to stop at the intersection.[3]  The officer testified that the Stop sign at the left

---

[3] **See** 75 Pa.C.S.A. § 3323(b) (stating in pertinent part:  "**Duties at stop signs.—**. . . [E]very driver of a vehicle approaching a stop sign shall stop at a clearly marked stop line or, if no stop line is present . . . then at the point nearest the intersecting roadway where the driver has a clear view of approaching traffic on the intersecting roadway before entering.").

hand side of the intersection was visible to drivers proceeding in the direction of travel that he and [Appellant] were traveling.

Mr. Reigart . . . indicated that this is a well-known intersection to PennDOT because of its unusual layout. He testified that in the year 2000 a directive came down from PennDOT to put a Stop sign on the left hand side of the intersection as well as the right hand side. He further testified that in 2011 PennDOT decided to post an extra-large 36-inch sign on both sides of the intersection. The 36-inch sign was in place on the date of the traffic stop of [Appellant] by Trooper Dively. Mr. Reigart testified that it is not unusual for PennDOT to post a Stop sign on the left hand side of an intersection, especially when visibility at the intersection is bad. [He] characterized the intersection in question in this case as being an intersection where visibility is bad. Mr. Reigart testified that this was a "very unus[ual] intersection," with "sight distance [issues]." [(N.T. Suppression Hearing, 12/18/13, at 18-19)]. He noted that it is a very narrow road and there is no shoulder. He also indicated that there were numerous accidents occurring at this intersection. Mr. Reigart indicated that the [Federal Highway Administration's] Manual on Uniform Traffic Control Devices [(MUTCD)] is the manual and reference that guides where PennDOT places traffic control devices.

(Trial Court Opinion, 5/08/14, at 1-2).

On September 17, 2013, Appellant filed an omnibus pretrial motion seeking suppression of the evidence. The trial court held a hearing on December 18, 2013, and it entered its order denying the motion on May 8, 2014. The case proceeded to a bench trial on September 18, 2014, at which the parties stipulated that Appellant was guilty of the four DUI counts. (*See* Stipulation, 9/18/14, at 2, ¶ 9; Order, 9/18/14, at 1-2). On November 3, 2014, after a hearing and review of a pre-sentence investigation report, the court sentenced Appellant to a term of six months' county intermediate

punishment. (*See* N.T. Sentencing Hearing, 11/03/14, at 3). This timely appeal followed.[4]

On appeal, Appellant challenges the trial court's denial of his motion to suppress evidence, arguing that the traffic stop was illegal. (*See* Appellant's Brief, at 6, 15-17).[5] Specifically, he asserts that the stop was not supported by probable cause where there was no stop sign posted on the right side of the intersection, and the sign posted on the left side was merely an advisory safety measure. (*See id.* at 17). He bases his argument on certain provisions of the MUTCD, which he claims requires stop signs to be placed on the right-hand side of the road. (*See id.* at 3, 6, 15). This issue does not merit relief.

> The standard and scope of review for a challenge to the denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions

---

[4] Pursuant to the trial court's order, Appellant filed a timely concise statement of errors complained of on appeal on November 19, 2014. *See* Pa.R.A.P. 1925(b). The trial court entered its opinion on February 2, 2015. *See* Pa.R.A.P. 1925(a).

[5] Appellant's brief does not contain a statement of the questions involved, as required by Pennsylvania Rule of Appellate Procedure 2116. *See* Pa.R.A.P. 2116(a). Generally, the failure to include such a statement would result in a waiver of all claims on appeal. *See id.* ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). However, because we can discern the crux of Appellant's issue from other portions of his brief, we will overlook this briefing deficiency. *See Commonwealth v. Stradley*, 50 A.3d 769, 771 n.2 (Pa. Super. 2012) (declining to find waiver on basis of Rule 2116 violation where issue raised in other section of brief and defect did not impede this Court's ability to address merits).

drawn from those facts are correct. When reviewing rulings of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Leonard*, 951 A.2d 393, 396 (Pa. Super. 2008) (citation omitted).

"Further, [i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Houck*, 102 A.3d 443, 455 (Pa. Super. 2014) (citation and internal quotation marks omitted).

Section 6308 of the Vehicle Code provides, in pertinent part:

**§ 6308. Investigation by police officers**

\* \* \*

**(b) Authority of police officer.**—Whenever a police officer . . . has **reasonable suspicion** that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b) (emphasis added).

When the police stop a vehicle in this Commonwealth for investigatory purposes, the vehicle, and its occupants are considered 'seized' and this seizure is subject to constitutional constraints. Police can initiate an investigatory stop when they have reasonable suspicion of a [Vehicle Code] violation. **Neither the federal nor the state constitution prevents**

- 5 -

**police from stopping and questioning motorists when [the police] witness or suspect a violation of traffic laws, even if it is a minor offense**.

*Commonwealth v. Muhammed*, 992 A.2d 897, 900 (Pa. Super. 2010) (citations and some quotation marks omitted) (emphasis added).

> [T]o establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. The question of whether reasonable suspicion existed at the time [the officer conducted the stop] must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a particularized and objective basis for suspecting the individual stopped. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the [stop] warrant a [person] of reasonable caution in the belief that the action taken was appropriate.
>
> . . . **While an actual violation need not be established, a reasonable basis for the officer's belief is required to validate the stop.**

*Commonwealth v. Postie*, 110 A.3d 1034, 1039-40 (Pa. Super. 2015) (citation and quotation marks omitted; emphasis original). "Indeed, even stops based on factual mistakes generally are constitutional if the mistake is objectively reasonable." *Muhammed*, *supra* at 901 (citation omitted).

Furthermore, the United States Supreme Court has recently held that a police officer's reasonable mistake of law can give rise to reasonable suspicion justifying a traffic stop under the Fourth Amendment. *See Heien*

***v. North Carolina***, 135 S.Ct. 530, 534 (2014) (holding traffic stop lawful where officer's mistake about brake-light law was reasonable).

Here, at the suppression hearing, Trooper Dively testified that he observed Appellant's vehicle "come up on a three-way intersection and fail[] to stop at the posted [extra-large thirty-six inch] stop sign there." (N.T. Suppression Hearing, 12/18/13, at 11; ***see id.*** at 22; Trial Ct. Op., 5/08/14, at 2). He stated that the stop sign was posted conspicuously on the left-hand side of the road, and that Appellant was "driving directly towards the left posted stop sign." (N.T. Suppression Hearing, 12/18/13, at 11; ***see id.*** at 15). The trooper further testified that, to his knowledge, Appellant's failure to stop at the sign was a violation of the Vehicle Code. (***See id.*** at 11); ***see also*** 75 Pa.C.S.A. § 3323(b).

Based on the foregoing, we agree with the trial court that Trooper Dively articulated the requisite reasonable suspicion to stop Appellant. (***See*** Trial Ct. Op., 2/02/15, at 2); ***see also*** 75 Pa.C.S.A. § 6308(b); ***Postie, supra*** at 1039-40. Appellant's argument premised on incorrect stop sign placement fails because "an actual [Vehicle Code] violation need not be established[.]" ***Postie, supra*** at 1040 (emphasis omitted). Therefore, we conclude that the court properly denied Appellant's motion to suppress evidence. ***See Leonard***, ***supra*** at 396; ***see also Muhammed, supra*** at 902-03 (determining police officer had reasonable suspicion of Vehicle Code violation when he stopped appellant; therefore, trial court properly denied

- 7 -

suppression motion). Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/6/2015