# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF EAST GRAND RAPIDS,

        Plaintiff-Appellee,

v

TREVOR ALLEN VANDERHART,

        Defendant-Appellant.

UNPUBLISHED
April 11, 2017

No. 329259
Kent Circuit Court
LC No. 14-010058-AR

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

SAWYER, J. (*dissenting*).

I respectfully dissent.

I cannot agree with the analysis of either of my colleagues that reaches the conclusion to affirm.

Turning first to the lead opinion, it offers the view that the traffic stop was not lawful under MCL 257.686, but was lawful under MCL 257.683. The concurrence disagrees with the conclusion that the stop was not justified under MCL 257.686, but "cannot conclude"[1] that it was justified under MCL 257.683 while stopping short of explicitly saying that it cannot be justified under that section. I, on the other hand, agree with the lead opinion that § 686 does not apply, even in light of the "mistaken understanding" standard in *Heien v North Carolina*, 574 US ___; 135 S Ct 530; 190 L Ed 2d 475 (2014). But I disagree that it is justified under § 683.

Had the concurrence affirmatively stated that it disagreed with the lead opinion's conclusion under § 683, I could end my dissent here, merely agreeing with the concurrence on that point while agreeing with the lead opinion on the § 686 analysis. But since it did not take a conclusive position on § 683, I will turn my attention to why I do not agree with the lead opinion on this point.[2]

---

[1] Opinion of MURPHY, J., *ante, slip op* at 1.

[2] I do not wish to belabor the analysis of § 686 beyond agreeing with the lead opinion, including the lead opinion's conclusion that our decision in *People v Williams*, 236 Mich App 610; 601

-1-

First, neither Judge Servaas in the district court nor Judge Johnston in the circuit court based their decisions on § 683. I recognize that an appellate court can, and occasionally does, affirm a lower court on a different basis on a theory of "right result, wrong reason." See, *e.g.*, *People v Miller*, 498 Mich 13, 27; 869 NW2d 204 (2015). But I prefer to use that doctrine sparingly, allowing the trial court to resolve a question in the first instance. This is, to my mind, particularly important where, as here, the resolution involves a factual interpretation. That is, even if the lead opinion is correct on the general application of § 683 to this type of case, whether it applies in this particular case would require a factual determination whether the degree of difference in the illumination of the two taillights would render the vehicle unsafe. Therefore, even if I were to agree with the lead opinion's interpretation of § 683, I would at most believe that that would justify a reversal of the circuit court and a remand to the district court for consideration of that issue.

Second, the lead opinion is inconsistent in its analysis of § 683 compared to its analysis of § 686. The lead opinion rejects applying § 686 because the Legislature set the standard for taillights at being red and visible at 500 feet. Yet, in its analysis of § 683, the lead opinion conveniently ignores this standard. That is, while acknowledging that the taillight at issue was in compliance with § 686, the lead opinion nevertheless concludes that it fails to comply with § 683 despite the fact that § 686 imposes no additional specific requirements for taillights beyond that required under § 686.

Worse yet, the lead opinion sets its own standard of "unsafe" as being a difference in illumination. If the Legislature had wanted to prohibit taillights from having a different illumination level from each other, the Legislature could easily have said so. The Legislature's not having done so, the lead opinion seeks to make up for the Legislature's failing and amends the statute itself. I take heed in the admonitions of the late Justice Scalia and Bryan Garner in *Reading Law: The Interpretation of Legal Texts*, Thomson/West (2012), p 350:

> The view of the judge as a telepathic time-traveler and collaborative lawmaker ignores the reality that it is, in Judge Easterbrook's words, "impossible for a court—even one that knows each legislator's complete table of preferences—to say what the whole body would have done with a proposal it did not consider in fact." Further: "[J]udicial predictions of how the legislature would have decided issues it did not in fact decide are bound to be little more than wild guesses." [Quoting Frank H. Easterbrook, *Statutes' Domains*, 50 U Chi L Rev 533, 547-548.]

---

NW2d 138 (1999), does not apply here. But, having been on the panel that decided *Williams*, I want to express my concern that *Williams* should not be read too broadly. To me, there is a significant difference between a situation where there is but a single lamp on each side and one of those lamps is not functioning and the situation where there are several small lamps on each side and the lamp assembly is slightly dimmer because one or two small lamps are burned out. Indeed, I think that *Williams*, and the Legislature for that matter, merely envisioned the traditional "single bulb" lamp assembly and considered a simple set of conditions—lit or not lit. Modern design changes have made the situation more complicated than we faced in *Williams*.

Rather than making a wild guess at how the Legislature might choose to address a taillight design that allows for a differential in illumination, I am content to leave it to the Legislature to make any adjustments to the statute that it might deem necessary.

Third, the lead opinion speculates that "when one taillight is significantly brighter than the other, a dangerous condition may arise because other people may think that the person with the defective taillight was" braking all the time. *Ante, slip op* at 9. This analysis piles supposition upon speculation and conveniently employs rather vague generalities. What is "significantly brighter" versus "insignificantly brighter"? How do we know what other people "may" think? And even if we can read the minds of those drivers, can we be so sure that a dangerous condition "may arise"? While engaging in no greater speculation or supposition than the lead opinion, I would suggest that such a condition would cause these "other people" to exercise *greater* care, not lesser, if they believed that the car in front of them might be braking.

Returning to the question of what is "significantly brighter," the lead opinion offers no standard by which a trial court or, for that matter, a traffic officer, can make such a judgment. With many modern taillights no longer consisting of just a single lamp, but a collection of several smaller lamps, at what point does, in the lead opinion's rule, a car become unsafe under § 683? When one of the smaller bulbs is burned out? Or two? Is the "unsafe" nature of such a vehicle dependent on a particular officer's visual acuity and his or her ability to detect a burned out bulb in the collection? Is a car "unsafe" when a single such bulb is burned out and the driver has the misfortune of being followed by an eagle-eyed officer while another vehicle might be "safe" with two or three small bulbs burned out but the driver has the good fortune of being seen by an officer with more typical vision? Perhaps that second vehicle will suddenly become "unsafe" as the average-eyed officer draws nearer and finally is able to see that one of the small bulbs is burned out. Reliance on § 683 and deeming a car to be "unsafe" must, at a minimum, be done with extreme caution. This case could represent the first leg down the road of declaring any car that is not in "factory perfect" condition to be "unsafe" and I doubt that that was the Legislature's intent.[3] Indeed, in cases such as this one, it might even create the risk that designs that might actually enhance safety become a technical lack of safety—would not multiple bulbs make it safer when one of the bulbs burns out and the rest remain lit?

Rather, § 683 must be employed in those circumstances where a car is in an unsafe condition in a manner beyond the contemplation of the Legislature in drafting the motor vehicle code. For example, I doubt that the motor vehicle code specifically prohibits a driver from securing the car's bumper by means of duct tape. Yet, I would suggest that such an arrangement presents an unsafe condition—the bumper might fall off in traffic and present a sudden hazard for the other vehicles in the vicinity. But even this presents a factual situation to be resolved in the trial court. Which brings me back to my original point: even if we accept the proposition that a differential in illumination between the taillights renders a car unsafe, that too presents a

---

[3] Indeed, the lead opinion, in its analysis of § 686 acknowledges this point. *Ante, slip op* at 6.

factual determination for the trial court. It is not for this Court (or for the circuit court sitting on appeal) to make. And, in this case, Judge Servaas made no such finding.[4]

Thus, I end the analysis of § 683 where the lead opinion started with § 686—the Legislature required a taillight that is red and visible at 500 feet and that was met here. So Officer Lobbezoo had no basis for making the traffic stop in the first place.

For these reasons, I would reverse the circuit court and reinstate the decision of the district court.

/s/ David H. Sawyer

---

[4] To the extent that the lead opinion relies on Judge Jordon's findings, I believe that reliance is misplaced. Because Judge Servaas revisited this issue, it is Judge Servaas' findings and conclusions that are relevant to this appeal, not those of the predecessor judge.