NOT DESIGNATED FOR PUBLICATION

No. 117,388

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT JENSEN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Geary District Court; RYAN W. ROSAUER, judge. Opinion filed May 18, 2018. Affirmed.

*Randall L. Hodgkinson*, Kansas Appellate Defender Office, for appellant.

*Tony Cruz*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., BUSER and GARDNER, JJ.

PER CURIAM: Robert Jensen appeals his conviction of possession of marijuana with intent to distribute, arguing that the district court erred in not permitting him to withdraw his plea postsentencing. But a defendant must show manifest injustice to set aside a plea postsentencing. The district court held an evidentiary hearing on Jensen's claims that manifest injustice was shown because his trial counsel was ineffective. We find the district court's factual findings are supported by substantial evidence which warrants its legal conclusions. Thus, we find no abuse of discretion in the district court's ruling that Jensen failed to show manifest injustice. We affirm.

1

*Factual and procedural background*

In May 2014, Jensen was traveling on I-70 through Geary County, Kansas. His Colorado-licensed truck lacked a front license plate, but it had a back license plate. A Junction City Police Officer pulled Jensen over for this missing license plate, correctly believing that both a front and a back plate were required by Colorado, the vehicle's state of registration. See Colo. Rev. Stat. § 42-3-201(1)(a)(I). During the stop, Jensen indicated he had the front license plate but had not mounted it. The officer asked Jensen to come to his patrol vehicle while the officer started filling out a warning ticket for the license plate violation. While in the patrol vehicle, the officer questioned Jensen about his travel plans, and then approximately nine minutes into the stop began to search his vehicle and trailer with a canine. During this search, the canine alerted to the trailer and the officer discovered approximately 580 pounds of marijuana in the trailer.

At the plea hearing, Jensen stated there was no reason the district court should not accept his plea and that his attorney had answered any questions he had about the plea. Jensen pleaded no contest to one count of possession of marijuana over 450 grams but less than 30 kilograms with the intent to distribute. The court accepted the plea, finding that it was "freely, voluntarily, and intelligently entered." Jensen's counsel then advised the court that he intended to file a dispositional departure motion and would get it on file as soon as he could, but would want to have the defendant examined.

Jensen signed a written plea agreement that stated he had completed the 11th grade and was, at the time, 64 years old. The plea agreement also stated that the "State will oppose a dispositional departure of the sentence if [Jensen] files a motion so requesting but [Jensen] shall not file a motion requesting a durational departure as a condition of this plea agreement."

At sentencing on January 23, 2015, Jensen's counsel did not file a motion for a dispositional departure. However, counsel did advise the court that Jensen had an 11th grade education, suffered from diabetes, was a Vietnam War veteran, had no prior criminal history, was disabled, and requested the mitigated sentence of 92 months' imprisonment. The State did not object to the imposition of the mitigated sentence. At no time during sentencing did Jensen or his counsel ever raise the issue of probation or request probation. The district court sentenced Jensen to 92 months' imprisonment with a term of 36 months' postrelease supervision.

Approximately seven months later, on August 31, 2015, Jensen filed a pro se motion to withdraw his plea, alleging his trial counsel was ineffective. Several months later, Jensen's new counsel filed a memorandum in support of Jensen's pro se motion.

On January 27, 2017, the district court conducted an evidentiary hearing on Jensen's motion to withdraw his plea. Jensen testified that he was 64 years old when he was arrested and had an 11th grade education. Jensen's nephew had hired his previous counsel, Gary Conwell, who represented him during pretrial, his plea, and sentencing. He could not recall what he and Conwell had discussed during their first meeting but admitted that he and Conwell had spoken about the plea agreement and about a 92-month prison sentence. Jensen testified that he believed his attorney could have asked for him to be sentenced to probation and that he was aware an evaluation would cost thousands of dollars. He also testified, however, that he was aware he could not get a departure to less time or to probation in this case and that he agreed to a 92-month prison sentence. He said that he knew Conwell was attempting to talk with his nephew about paying for the evaluation fees.

Conwell also testified. He said that he had been practicing law for 34 years and had been retained by Jensen's nephew in this case. He understood, based on the plea agreement, that he could file a motion for a downward dispositional departure, but not a

3

downward durational departure. He had tried, unsuccessfully, to get in touch with Jensen's nephew several times regarding funding for an expert to perform an evaluation of Jensen to support a motion of a dispositional departure. Because Conwell was unsuccessful in acquiring funds for an evaluation, he did not believe he had any basis to file a request for a dispositional departure. Conwell also recorded his conversation with Jensen when they discussed the plea offer and discussed possible defenses. Conwell had informed Jensen that the district court was not bound by the agreement and could sentence him to the maximum sentence.

On cross-examination, Conwell testified that he had not filed a motion to suppress because there was no sound basis for such a motion. Had there been a sound basis, he would have filed a suppression motion. When asked about the strength of the State's case, Conwell testified that he believed the State had a strong case because he had watched the video from the officer's car and had heard Jensen state during the canine search: "Oh shit, they're going to find it." Conwell also testified that the factors he argued at sentencing weighed toward a mitigated sentence, and he felt any assertions he would have made in a dispositional motion were not evidence the court could consider without evidence provided by an expert evaluator. He said an evaluator was required to corroborate some of the things Jensen had advised him about, such as Jensen's medical history and medical conditions. Conwell admitted he did not request Jensen's medical or Veterans Affairs records.

Conwell denied that the existence of any conflict of interest arose from the fact that he had been paid by Jensen's nephew to represent Jensen. Jensen alleged that Conwell had failed to investigate the case but then tried to prevent Conwell from answering questions regarding his investigation and the strength of the State's case. When the district court allowed Conwell to testify to what his investigation revealed, Conwell said he was able to determine that Jensen had transported marijuana on "a couple" of prior occasions and that Jensen knew the layout of the drug operation, which had ties to

4

Mexico. No other evidence was presented on the validity of those assertions. Conwell investigated the officer who had arrested Jensen and found him to be "very well trained" and "well respected." Conwell decided not to file a motion to suppress after he conducted legal research. Jensen never advised him that he wanted to withdraw his plea, even after he was sentenced.

The district court issued a memorandum decision denying Jensen's motion to withdraw his plea, finding no manifest injustice. Jensen timely appeals the district court's denial of his motion to withdraw his plea.

*Did the district court err in denying Jensen's postsentencing motion to withdraw his plea?*

Jensen's sole argument on appeal is that the district court erred by denying his motion to withdraw his plea.

When a defendant files a motion to withdraw a plea after sentencing, as here, the court may permit withdrawal of the plea only "[t]o correct manifest injustice." K.S.A. 2017 Supp. 22-3210(d)(2). This court usually reviews a district court's denial of such a motion for an abuse of discretion. *State v. Davisson*, 303 Kan. 1062, 1064, 370 P.3d 423 (2016).

> "Judicial discretion is abused if judicial action is (1) arbitrary, fanciful, or unreasonable, *i.e.*, no reasonable person would take the view adopted by the trial court; (2) based on an error of law, *i.e.*, the discretion is guided by an erroneous legal conclusion; or (3) based on an error of fact, *i.e.*, substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." 303 Kan. at 1065.

5

Jensen bears the burden to prove the district court abused its discretion in denying his motion. *State v. Bricker*, 292 Kan. 239, 244, 252 P.3d 118 (2011).

Jensen argues that his motion should have been granted because his attorney was incompetent. The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This right to counsel is applicable to proceedings in Kansas state courts under the Fourteenth Amendment. *Miller v. State*, 298 Kan. 921, 929, 318 P.3d 155 (2014). The guarantee includes the right to more than the mere presence of an attorney but also that the attorney act with some minimum level of competence. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). "The purpose of the effective assistance guarantee 'is simply to ensure that criminal defendants receive a fair trial.'" *State v. Galaviz*, 296 Kan. 168, 174, 291 P.3d 62 (2012) (quoting *Strickland*, 466 U.S. at 689).

When the district court conducts a full evidentiary hearing on an ineffective assistance-of-counsel claim—as it did here—we must first determine whether the district court's findings are supported by substantial evidence and then determine whether the factual findings support the court's legal conclusions. While we must accept the district court's factual findings (to the extent they are supported by substantial evidence), we review its ultimate legal conclusion independently, with no required deference to its ruling. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

Both in the district court and here, review of counsel's performance is highly deferential and requires consideration of all the evidence. This means that we must start with the presumption that the conduct of Jensen's trial attorney fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987

6

(2014). It is Jensen's burden to overcome this presumption. *Bledsoe v. State*, 283 Kan. 81, 90, 150 P.3d 868 (2007).

So to prevail, Jensen needed to establish: (1) that his trial attorney's work was below minimum standards and thus constitutionally deficient; and (2) that the attorney's substandard work prejudiced the defense. *Mattox v. State*, 293 Kan. 723, Syl. ¶ 1, 267 P.3d 746 (2011). The defendant's case is prejudiced under this standard if there is a reasonable probability that the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland*, 466 U.S. 667). Jensen claims his attorney was deficient in three respects: (1) he failed to file a motion for a downward dispositional departure; (2) he failed to file a motion to suppress the evidence derived from Jensen's traffic stop; and (3) he had a conflict of interest. We examine these in turn below.

A. *Failure to file a motion requesting a downward dispositional departure*

First, Jensen argues that his counsel was ineffective for failing to file a motion for a downward dispositional departure. Conwell testified he did not file such a motion because Jensen did not have funds to hire an expert evaluator to support the motion. The district court held the plea agreement was not based on a promise to file a departure motion. The plea agreement left open the possibility that a dispositional departure *may* be filed and, that if such a motion were filed, the State retained the right to oppose it. The district court held that Conwell was not incompetent in not filing a dispositional departure motion because he was unable to obtain an evaluation of Jensen in support of his motion, and Conwell could not put Jensen on the stand in support of the motion because Jensen had apparently confessed to being part of a larger drug operation. The district court noted that Jensen had admitted at the evidentiary hearing that he believed he was going to receive a 92-month prison sentence under the terms of the plea agreement— the exact sentence he received.

7

Jensen makes two arguments as to why his counsel should have filed a motion for a dispositional departure. First, Jensen argues that the factors Conwell used to argue before the district court for the mitigated grid box sentence should have been used in support of such a motion. Under K.S.A. 2017 Supp. 21-6815(a), a sentencing judge must find "substantial and compelling reasons to impose a departure sentence." Without an evaluation, the only individual who could substantiate the claims Jensen now argues should have been used in a motion for a downward dispositional departure was Jensen himself. But Conwell believed that he could not put Jensen on the stand to provide evidence in support of a dispositional departure without raising the specter of perjury, because Jensen had confessed to Conwell that he was part of a larger drug enterprise. See Kansas Rule of Professional Conduct (KRPC) 3.3(a)(3) (2018 Kan. S. Ct. 344) (Comment 8). The district court found this to be a valid reason, and Jensen does not show Conwell's failure to put him on the stand was deficient performance which actually prejudiced him.

Second, Jensen argues for the first time on appeal that Conwell's rationale for not filing a downward dispositional departure—lack of funding—was invalid because K.S.A. 22-4508 permitted his attorney to petition the court to pay for services of an evaluator. But Jensen did not raise that argument before the district court and does not provide an explanation on appeal as to why this issue is properly before this court, as our rules require. See Kansas Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 34). Thus, we cannot reach the merits of this argument. See *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

Importantly, no evidence shows that Jensen was misled into believing his attorney would be filing a motion for a downward dispositional departure. Conwell testified that he went over the plea agreement with Jensen line-by-line, and Jensen testified that he knew he was facing either 92 months in prison or a presumptive prison sentence. Jensen claims Conwell promised him he would file a departure motion; however, Conwell

8

testified that he told Jensen that the filing of such a motion was contingent on obtaining an evaluation and that payment would be needed to hire an expert to perform the evaluation. Based on its ruling, the district court found Conwell more credible, and it is not this court's role to assess the credibility of witnesses. *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016). Consistently, the language of the plea agreement itself contains no promise of the filing of such a motion—it simply states that *if* such a motion is filed it will be opposed by the State. The district court's findings are supported by substantial evidence, and that evidence fails to show that Jensen's counsel was ineffective for not having filed a motion for a downward dispositional departure.

B. *Failure to file a motion to suppress the evidence derived from Jensen's traffic stop*

Jensen next argues that Conwell was ineffective because he failed to file a motion to suppress the evidence of the marijuana derived from the warrantless search of Jensen's trailer. The district court held that Conwell appropriately investigated and researched the issue and reasonably determined there was no basis for the motion, and Jensen failed to prove otherwise. Jensen argues that a competent attorney could have filed a motion to suppress which challenged both the initial stop of his vehicle and the extension of the stop.

*The initial stop*

The initial stop was based on the officer's belief that Jensen violated Kansas law by driving his vehicle in Kansas without two Colorado license plates. The vehicle Jensen drove was registered in Colorado. Motor vehicles licensed in Colorado must display both a front and a back license plate. Colo. Rev. Stat. §§ 42-3-201(1)(a)(I); 42-3-202. Kansas law makes it illegal to operate in Kansas a vehicle that "does not have attached thereto and displayed thereon the license plate or plates assigned thereto." K.S.A. 2017 Supp. 8-

9

142. Our law grants reciprocal driving privileges by stating that "nonresident owners, *when duly licensed in the state of residence*, are hereby granted the privilege of operation of any such vehicle within the state to the extent that reciprocal privileges are granted to residents of this state by the state of residence of such nonresident owner." (Emphasis added.) K.S.A. 2017 Supp. 8-138a.

In *State v. Wakole*, 265 Kan. 53, Syl., 959 P.2d 882 (1998), the Kansas Supreme Court held that as long as a vehicle is duly licensed in its "home state," the out-of-state vehicle is duly licensed in Kansas as required by K.S.A. 8-142's grant of reciprocity to out-of-state drivers under K.S.A. 8-138a. The question here is whether the inverse is thus true: that because Jensen's vehicle was not properly licensed under the laws of the vehicle's "home state," which required him to have both a back and front license plate, his vehicle was not properly licensed under K.S.A. 2017 Supp. 8-142. See Colo. Rev. Stat. § 42-3-201(1)(a)(I); *Wakole*, 265 Kan. 53, Syl. We suggested that the answer to this question is "yes" in *State v. Hayes*, 8 Kan. App. 2d 531, 532, 660 P.2d 1387 (1983). There, we found that "[t]he operation in Kansas of a foreign-registered vehicle without a Kansas tag is lawful solely by virtue of K.S.A. 8-138a which grants to nonresident owners the privilege of operating in Kansas a vehicle 'duly licensed' in their own state to the extent that their state grants reciprocal privileges to Kansas residents." 8 Kan. App. 2d at 532.

Although our courts have not directly resolved the issue whether a driver violates Kansas law by having one, instead of the two license plates required by another state in which the vehicle is registered, federal courts have done so. They consistently interpret Kansas law as permitting a traffic stop in such circumstances. See *United States v. Ramstad*, 308 F.3d 1139, 1146 (10th Cir. 2002) (holding Kansas trooper was empowered, under K.S.A. 8-138a, to stop vehicle displaying only one California license plate in apparent violation of California law requiring the display of both front and back license plates); *United States v. Carel*, No. 03-40060-01-RDR, 2004 WL 290993, at *2 (D. Kan.

2004) (finding officer's initial stop in Kansas was legal because defendant's truck did not have a front license tag as required in California, where it was registered). Cf. *United States v. Franklin*, No. 09-40042-JAR, 2009 WL 3335602, at *5 (D. Kan. 2009) (finding trooper had reasonable suspicion that the occupants were operating the car in violation of Kansas law where the vehicle did not appear to be "duly licensed" in its registration state). Those cases support the officer's reasonable suspicion that Jensen's tag display violated Kansas law.

To conduct a traffic stop, "officers need only 'reasonable suspicion'—that is, 'a particularized and objective basis for suspecting the particular person stopped' of breaking the law." *Heien v. North Carolina*, 574 U.S. __, 135 S. Ct. 530, 536, 190 L. Ed. 2d. 475 (2014). Because only reasonable suspicion of a traffic violation is necessary, evidence of other crimes discovered as a result of a vehicle stop based on reasonable suspicion of a license plate violation may be admissible even if the license plate is subsequently determined to be proper. *State v. Hardin*, 49 Kan. App. 2d 81, Syl. ¶ 4, 304 P.3d 354 (2013).

Even if the officer was mistaken and a person can legally operate a vehicle in Kansas bearing only one of two tags required by the registration state, the Fourth Amendment is not violated when a police officer makes a mistake of law in regard to a traffic stop, as long as such an error is objectively reasonable. See *Heien*, 135 S. Ct. at 536. The relevant question is whether an officer in the arresting officer's position, not an attorney or a judge, could reasonably make the mistake. See *Heien*, 135 S. Ct. at 540. K.S.A. 2017 Supp. 8-142, viewed in context with K.S.A. 2017 Supp. 8-138a, poses a difficult question of interpretation which has not previously been construed by the Kansas appellate courts and on which reasonable minds could differ. The officer's mistake here, if any, was thus objectively reasonable, rendering the initial stop legal. See *Heien*, 135 S. Ct. at 540 ("This 'stop lamp' provision, moreover, had never been previously construed by North Carolina's appellate courts. . . . It was thus objectively reasonable for an officer in

11

Sergeant Darisse's position to think that Heien's faulty right brake light was a violation of North Carolina law. And because the mistake of law was reasonable, there was reasonable suspicion justifying the stop.").

*The extension of the stop*

Jensen also contends that the stop was improperly extended by the use of a canine, but he offers no factual support for that contention. Nor did he offer any below. The facts of record show that the officer deployed his canine while awaiting results of a records check from dispatch approximately nine minutes into the traffic stop. A records check, as performed here, is an ordinary inquiry incident to a traffic stop. *Rodriguez v. United States*, 575 U.S. ___, 135 S. Ct. 1609, 1615, 191 L. Ed. 2d 492 (2015). Jensen offers no facts to show that the officer unreasonably delayed in beginning his records check or that his use of a canine extended the duration of the routine traffic stop whatsoever. See *Illinois v. Caballes*, 543 U.S. 405, 407-09, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005) (finding the Fourth Amendment does not require reasonable suspicion to justify using a drug-detection dog so long as the duration of the stop is not extended). Thus Jensen has shown no factual basis for this argument. The district court found "Conwell determined the stop had lasted a reasonable period of time in accordance with Kansas law when the officer developed a reasonable and articulable suspicion that there was further illegal activity that then led to a search." We have no facts to contradict that finding.

Jensen's argument is basically that a competent attorney would have filed a suppression motion even without a factual or legal basis to do so, just to see what happens. We agree that many defense attorneys would routinely file a motion to suppress in any case involving a traffic stop which leads to the discovery of large amounts of drugs. But based on the law summarized above and the facts clearly established by the record, a competent attorney could reasonably have chosen not to do so here. The district court found that Conwell conducted a reasonable investigation, weighed the suppression

12

motion's likelihood of success against the benefits of a plea agreement, and decided that Jensen's best route was a plea agreement. Substantial evidence thus supports that finding; the district court did not err in holding that Jensen's counsel was not ineffective for not having filed a motion to suppress.

C. *Jensen's attorney's conflict of interest*

Finally, Jensen argues that he was represented by incompetent counsel because his attorney may have had a conflict of interest. Jensen contends that his nephew, a potential codefendant, was paying for Jensen's legal representation. He argues that Conwell's discovery that Jensen's nephew had introduced Jensen to others involved in the drug enterprise may have made Jensen's nephew a codefendant.

Conwell testified at the evidentiary hearing, however, that Jensen's nephew was not involved in this transaction. The district court held no conflict of interest arose merely because Jensen's nephew had paid or had agreed to pay for his uncle's legal services. It found no evidence that Jensen's nephew was involved in any criminal misconduct surrounding the drug enterprise, no evidence that Conwell had represented the nephew in any legal action, much less any action that involved Jensen, and no evidence Conwell had any agreement with Jensen's nephew as to the terms of Jensen's representation other than the fee schedule. The district court also noted that Jensen's nephew failed to pay Conwell the second half of his fee. Jensen has not shown any evidence to contradict those findings.

Jensen correctly asserts that "[t]he potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one codefendant." KRPC 1.7 (2018 Kan. S. Ct. 306) (Comment 23). Here, however, as the district court concluded, there is simply no evidence that Jensen's nephew was a client of Conwell, either prior to, concurrently with, or after

13

Conwell's representation of Jensen. Substantial competent evidence supports the district court's factual findings and warrants the legal conclusion that no conflict of interest compelled Conwell's withdrawal.

Jensen has failed to show that his attorney's performance fell below constitutionally required minimum standards for legal representation. Additionally, Jensen has not shown how any deficient performance by his attorney prejudiced him; thus, we consider that necessary showing waived. See *State v. Tague*, 296 Kan. 993, 1001, 298 P.3d 273 (2013) (finding an argument that is not supported with pertinent authority is deemed waived and abandoned and a point raised incidentally in a brief and not argued therein is also deemed abandoned).

Based on the findings above, we find no abuse of discretion in the district court's ruling that Jensen failed to prove the manifest injustice necessary to set aside his plea after sentencing.

Affirmed.