[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14796
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cr-00467-MHH-TMP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ZACHARY JERREL CHEEKS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(November 20, 2019)

Before MARTIN, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

Zachary Cheeks appeals his conviction and sentence for one count of possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii).[1] He challenges the denial of his pre-trial motion to suppress and two aspects of his sentence. Because the district court properly denied the pre-trial motion to suppress, we affirm the conviction. We find Cheeks's challenges to his sentence foreclosed by an appeal waiver and thus dismiss as to those challenges.

## I.    BACKGROUND

In 2017, a federal grand jury indicted Zachary Cheeks on possession with intent to distribute 50 grams or more of methamphetamine. Cheeks initially pleaded not guilty. He then moved to suppress the drug evidence seized from his car in connection with his arrest. He argued that the law enforcement officer who conducted the search lacked reasonable suspicion to stop him and the officer unlawfully prolonged the stop in violation of his Fourth Amendment right to be free from unreasonable searches and seizures.

---

[1] "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). "In the case of a violation of subsection (a) of this section involving . . . 50 grams or more of methamphetamine . . . such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life." *Id.* § 841(b)(1)(A)(viii).

The district court held a hearing on the motion during which the following evidence was presented.  Officer Danny Turner of the Heflin, Alabama Police Department testified that on April 6, 2017, while on patrol on the westbound side of I-20, he saw Cheeks, on two separate occasions, make a lane change where his turn signal came on but turned off before he transitioned from one lane to the other.  On that basis, Officer Turner initiated a traffic stop.  He approached the passenger side of the vehicle, rather than the driver side, in the interest of safety, and saw a female passenger in the front seat.  Officer Turner asked Cheeks, who was driving, for his license, which Cheeks gave him.  While he was talking to Cheeks, Officer Turner smelled the distinct "odor of burnt marijuana emitting from the passenger area of the compartment."  He then started looking around the vehicle and saw marijuana residue on the inside handle area of the passenger side door.  Officer Turner then returned to his patrol car where he ran Cheeks's criminal history check, which revealed that Cheeks "had a criminal history for previous drug offenses."

Officer Turner then returned to Cheeks's vehicle and told him that he would give him a written warning for the improper lane change and asked him to come back to the patrol car while Officer Turner wrote the warning.  Cheeks stepped out of the car.  Officer Turner observed that the passenger looked nervous, which he thought was strange because she would not receive a ticket for the traffic violation.

3

Officer Turner asked for her name and learned that her last name was Barclay.  He asked for her driver's license, which she gave to him.  While Barclay was looking for her license, Officer Turner asked her about what she and Cheeks had been doing that day.  She said that they had gone somewhere in Georgia the day before to see friends, but she could not tell him the specific place in Georgia and did not disclose the names of the friends.  According to Barclay, she and Cheeks had spent the night in Georgia and were now returning home.  Officer Turner then returned to his patrol car with Cheeks and began asking Cheeks about the couple's travel plans.  Cheeks said that they had recently left the Talladega or St. Clair area, had gone to Tallapoosa, Georgia, "[p]layed some scratch offs," and were now on their way home.  Cheeks also said that he and Barclay did not know anyone in Georgia.  At this point Office Turner also learned that the car did not belong to either Cheeks or Barclay.

Officer Turner testified that at that point, he suspected drug activity based on the fact that the vehicle did not belong to either Cheeks or Barclay, the odor of burnt marijuana, the marijuana residue, Barclay's nervous behavior, and the conflicting information he was given regarding travel plans.  Officer Turner then asked Cheeks if he could search the vehicle, and Cheeks said, according to Officer Turner, "yes or yeah."  Officer Turner then leaned between the two front seats of the car and found on the rear floorboard a clear plastic container containing what

4

he recognized immediately as methamphetamine.  Officer Turner placed Cheeks under arrest and gave Cheeks his *Miranda* warnings.  Cheeks then admitted that the methamphetamine was his and explained that Barclay had nothing to do with it.

On cross-examination, Officer Turner admitted that had the improper lane change been the only conduct at issue, the stop would have been shorter, but the marijuana odor and residue caused him to extend the stop.  He also stated that he did not use the narcotics detection dog that was with him, take pictures of the marijuana residue in the car, or find any marijuana-related paraphernalia in the car. Officer Turner also explained that he understood Alabama law to require that a driver, when making a lane change, signal for 100 feet prior to making the lane change and continuously throughout the lane change.

The district court denied Cheeks's motion to suppress.  The district court explained that it found Officer Turner's testimony credible and consistent with the video recording of the traffic stop.  The court then determined that the initiation of the traffic stop was valid because a reasonable officer could have believed that Alabama law, specifically Ala. Code § 32-5A-133, requires the driver to signal throughout a lane change.  Further, the district court determined that the odor and residue of marijuana gave Officer Turner probable cause, and "[a]t a bare minimum" reasonable suspicion, to continue the traffic stop to investigate drug crimes.  The court further explained that even if Officer Turner were mistaken

about the marijuana odor, the other circumstances of the stop about which Officer Turner credibly testified gave rise to reasonable suspicion.

Cheeks then entered into a plea agreement with the government.  Cheeks agreed to provide truthful and complete information regarding his crimes, including the extent of participation of other individuals.  In the event that Cheeks provided "substantial assistance," the government agreed that it "may" move for a downward departure under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e),[2] and that it would recommend a reduction for acceptance of responsibility and a sentence at the low end of the Guideline range.  Under the plea agreement, Cheeks agreed to waive his right to appeal or challenge on collateral review his conviction and sentence except with regard to "[a]ny sentence imposed in excess of the applicable statutory maximum sentence(s)," "[a]ny sentence that constitutes an upward departure from the advisory guideline sentencing range calculated by the court at the time sentence is imposed," "[i]neffective assistance of counsel," and the court's ruling on his motion to suppress.

---

[2] "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."  U.S.S.G. § 5K1.1.  "Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense."  18 U.S.C. § 3553(e).

At the change of plea hearing, the district court discussed the appeal waiver with Cheeks. The district court told Cheeks, "you are waiving, in other words, giving up your right to challenge on appeal or in a motion in this Court anything having to do with sentencing. You've reserved . . . four limited grounds that would still give you a basis for appeal." The district court set out each of the four grounds for appeal and explained that "[o]ther than those four grounds under this section . . . you are giving up your rights to appeal." The court then asked Cheeks if he had an adequate opportunity to discuss the waiver with his attorney, if he understood the rights he was giving up, and if he was giving up those rights voluntarily. Cheeks responded "yes" to each question. The district court stated "Mr. Cheeks, based on the written materials that have been presented to the Court and based on your answers to the Court's questions, the Court finds that you are acting voluntarily in this matter" and accepted the guilty plea.

Prior to Cheeks's entry of his guilty plea, the government filed a notice that it intended to seek an enhanced sentence under 21 U.S.C. § 851 based on Cheeks's prior 2015 Alabama conviction for unlawful possession of a controlled substance. Cheeks opposed the enhancement, arguing that his 2015 plea was not knowing, intelligent, and voluntary for various reasons, including that he suffers from intellectual deficiencies that impaired his ability to understand the consequences of the 2015 plea. In considering Cheeks's objection to the § 851 enhancement, the

district court heard testimony from Cheeks, clinical psychologist Dr. Henry Griffith, and Cheeks's counsel at the time of his 2015 plea.  After considering all the testimony, argument of counsel, related filings, and the record, the district court ultimately concluded that Cheeks's 2015 plea was knowing and voluntary and applied the § 851 enhancement.  The district court calculated the applicable sentencing guideline term as 240 months' imprisonment (the statutory mandatory minimum) but granted the government's motion for a downward departure based on substantial assistance, pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), and sentenced Cheeks to 180 months' imprisonment.

## II.    DISCUSSION

### A. Motion to Suppress

"Because rulings on motions to suppress involve mixed questions of fact and law, we review the district court's factual findings for clear error, and its application of the law to the facts *de novo*."  *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011) (quoting *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000)).  We construe all facts in the light most favorable to the government, the party that prevailed in the district court.  *See United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012).  "[W]e afford substantial deference to the factfinder's credibility determinations."  *Id.*

Cheeks argues the district court erred in denying his motion to suppress the drug evidence because Officer Turner lacked reasonable suspicion to stop his car based on the improper lane change.  He argues alternatively that even if Officer Turner had reasonable suspicion for the stop, he lacked reasonable suspicion to extend the stop by investigating possible drug crimes.  We evaluate each argument in turn.

### i.  Reasonable Suspicion Based on the Improper Lane Change

Cheeks first argues that Officer Turner unreasonably seized him in violation of the Fourth Amendment because he did not violate Alabama law by failing to signal throughout a lane change.  The Fourth Amendment provides for "the right of the people to be secure . . . against unreasonable searches and seizures."  U.S. Const. amend. IV.  A traffic stop is a "seizure" within the meaning of the Fourth Amendment.  *Whren v. United States*, 517 U.S. 806, 809–10 (1996).  For a traffic stop to comply with—i.e., be reasonable under—the Fourth Amendment, the officer must have "reasonable suspicion" of criminal activity.  *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014); *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990) ("[A] police officer may stop a vehicle 'when there is . . . probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles.'" (quoting *Delaware v. Prouse*, 440 U.S. 648, 660 (1979))).  In other

words, the officer must have "a particularized and objective basis for suspecting the person stopped of breaking the law." *Heien*, 574 U.S. at 536 (quoting *Navarette v. California*, 572 U.S. 393, 396 (2014)).

We must thus determine whether Officer Turner had reasonable suspicion to stop Cheeks based on his observation that Cheeks did not signal throughout the entire time he was changing lanes. In other words, we must determine whether Officer Turner had "a particularized and objective basis" to suspect Cheeks of criminal activity. *Id.* Officer Turner testified that he stopped Cheeks's car because on two separate occasions he observed Cheeks turn his turn signal on and then turn it off before completing the transition from one lane to the other. Officer Turner also testified that his understanding at the time was that Alabama Code § 32-5A-133 requires a driver to signal through the completion of a lane change. Alabama Code § 32-5A-133(a) provides that "[n]o person shall turn a vehicle or move right or left upon a roadway . . . without giving an appropriate signal in the manner hereinafter provided." Alabama Code § 32-5A-133(b) provides that "[a] signal of intention to turn right or left when required shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning."

We must determine whether Officer Turner could reasonably have believed that Alabama law prohibited Cheeks from turning off his turn signal before he had completed the lane change. Cheeks argues that Alabama Code § 32-5A-133

10

cannot reasonably be read in such manner. We disagree. The Supreme Court has explained that an officer has reasonable suspicion to make a traffic stop even if such stop was based on an incorrect reading of the law so long as such mistake of law was reasonable. *Heien*, 135 S. Ct. at 540. In *Heien*, the Supreme Court determined that an officer had reasonable suspicion to make a traffic stop where he stopped a driver for having only one working brake light because it was objectively reasonable to believe that North Carolina law required two working brake lights. *Id.* The Court explained that reasonable suspicion arises from an officer's understanding of the facts and of the relevant law, and that a reasonable mistake of law just like a reasonable mistake of fact does not preclude reasonable suspicion. *Id.* at 536.

As an initial matter, it is reasonable to conclude that the signal requirement applies to lane changes in addition to turns. Section 32-5A-133(a) says that it will define the appropriate signal for both turning and changing lanes, and the only requirement in the statute is the one contained in subsection (b)—that the signal must be given continuously for 100 feet before turning. By the statute's plain text, it is not unreasonable for an officer to believe that the 100-feet requirement applies both when changing lanes and when turning. Further, it is reasonable to conclude that the 100-feet requirement means that the signal must be given through completion of the lane change. Section 32-5A-133 provides that the signal must be

11

"given continuously during not less than the last 100 feet" before turning.  Unless the driver signals until he is entirely within the next lane, he has not signaled continuously for the last 100 feet before the lane change.  Thus, at the very least, Officer Turner's reading of the statute is reasonable, and consequently, there was reasonable suspicion justifying the stop.  *See Heien*, 574 U.S. at 540.

### ii.  Reasonable Suspicion to Investigate Drug Crimes

Even stops initially supported by reasonable suspicion may nonetheless violate the Fourth Amendment if the officer "diverts from the stop's purpose and adds time to the stop in order to investigate other crimes" without reasonable suspicion.  *United States v. Campbell*, 912 F.3d 1340, 1353 (11th Cir. 2019) (explaining that under the standard emanating from *Rodriguez v. United States*, 135 S. Ct. 1609, 1614–16 (2015), a stop is unlawfully prolonged when an officer "(1) conduct[s] an inquiry aimed at investigating other crimes (2) that adds time to the stop (3) without reasonable suspicion").  "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns."  *Rodriguez*, 135 S. Ct. at 1614 (internal citation omitted).  "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed."  *Id.*

12

The mission of the traffic stop includes "ordinary inquiries incident to [the traffic] stop." *Id.* at 1615 (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)). Those ordinary inquiries typically include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* They also include questions about travel plans. *Campbell*, 912 F.3d at 1354. The officer may also take "negligibly burdensome precautions" that are necessary to complete the stop safely. *Rodriguez*, 135 S. Ct. at 1616. What the officer may not do is extend the duration of the stop in order to investigate, without reasonable suspicion, other crimes. *Campbell*, 912 F.3d at 1353.

However, an officer may lawfully extend the stop if he acquires an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring. *See Rodriguez*, 135 S. Ct. at 1615; *accord United States v. Ramirez*, 476 F.3d 1231, 1237 (11th Cir. 2007). In determining whether the extension of a stop is justified by reasonable suspicion of criminal activity, a court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Cortez*, 449 U.S. at 417). If a stop is unlawfully prolonged without reasonable suspicion in violation of the Fourth Amendment, any evidence obtained as a result of that constitutional

13

violation generally must be suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963).

Officer Turner testified that while he was getting Cheeks's driver's license, he smelled the odor of burnt marijuana and saw marijuana residue on the inside of the passenger door. Our precedent makes clear that an officer's level of suspicion rises to the level of probable cause when he detects "what he [knows] from his law enforcement experience to be the odor of marijuana." *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991). Accordingly, the smell of marijuana gave Officer Turner reasonable suspicion that additional criminal activity had occurred or was occurring, which justified extending the stop. Cheeks argues that Officer Turner's testimony that he smelled marijuana is not credible based on the fact that he did not arrest Cheeks or Barclay for marijuana possession, did not photograph the marijuana residue, did not use a drug detection dog, and did not interrogate Cheeks or Barclay specifically about marijuana. However, the district court found Officer Turner's testimony credible, and this Court affords "substantial deference" to the district court's credibility determinations. *Lewis*, 674 F.3d at 1303. "We accept the factfinder's choice of whom to believe unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable fact finder could accept it." *United States v. Holt*, 777 F.3d 1234, 1255 (11th Cir. 2015) (quoting *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir.

14

2002)).  The fact that Officer Turner smelled marijuana and searched the vehicle

(with Cheeks's consent) without employing a drug detection dog or taking

photographs is not so improbable that no reasonable fact finder could believe it.[3]

Accordingly, Officer Turner had reasonable suspicion justifying an extension of

the stop to investigate drug crimes.  *See Rodriguez*, 135 S. Ct. at 1615.  Moreover,

Cheeks does not contest the validity of the consent he gave Officer Turner to

search the vehicle.  Accordingly, the district court did not err in denying the

motion to suppress.

## B. Sentencing

Cheeks raises two issues with respect to his sentence: (1) whether the district

court committed reversible error in increasing his sentence based on a prior

conviction because the prior conviction was invalid, and (2) whether the district

court erred in not considering additional mitigating factors after granting the

government's 18 U.S.C. § 3553(e) motion.  The government responds that Cheeks

waived those issues pursuant to an appeal waiver in his plea agreement.  Cheeks

argues that the appeal waiver is invalid because he did not knowingly and

voluntarily waive his right to appeal, due to mental deficiencies that were

discovered after he pleaded guilty.  He also argues that even if the waiver is valid,

---

[3] In fact, it was entirely reasonable that Officer Turner did not use the drug detection dog or photograph the marijuana residue since he found the container of methamphetamine almost immediately after beginning his search of the vehicle.

his arguments fall within an exception to the appeal waiver because they concern a sentence above the applicable Guideline range.  We address each argument in turn.

"We review the validity of a sentence appeal waiver *de novo*."  *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008).  An appeal waiver is valid if it was knowingly and voluntarily entered.  *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993).  To demonstrate that an appeal waiver was knowingly and voluntarily entered, "[t]he government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver."  *Id.* at 1351.  Where either of these conditions is satisfied, we will dismiss "without requiring the government to brief the merits of the appeal."  *United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997).

The district court's discussion of the appeal waiver at Cheeks's change of plea hearing was sufficiently specific to ensure that Cheeks knew the rights that he was waiving.  The district court explained "you are waiving, in other words, giving up your right to challenge on appeal or in a motion in this Court anything having to do with sentencing.  You've reserved . . . four limited grounds that would still give you a basis for appeal."  The district court then set out the four grounds for appeal and explained that "[o]ther than those four grounds under this section . . . you are

16

giving up your rights to appeal." Cheeks confirmed that he understood the rights he was waiving. The court further asked if Cheeks felt he had an adequate opportunity to discuss the waiver with his attorney, to which Cheeks responded "yes." The district court then explained that "based on [Cheeks's] answers," it found he was "acting voluntarily" when pleading guilty. The district court thus explained the appeal waiver specifically, questioned Cheeks about it, and determined that he had knowingly and voluntarily entered into it. Accordingly, the colloquy establishes that Cheeks "understood the nature and extent of the appeal waiver and agreed to it." *See Buchanan*, 131 F.3d at 1008.

Cheeks argues that his appeal waiver is nevertheless invalid because it is not "manifestly clear" from the record that he understood the significance of the waiver based on evidence about his intellectual capacity that he presented at sentencing. Although Cheeks presented the testimony of Dr. Griffith in support of his argument that his intellectual deficiencies prevented him from knowingly and voluntarily pleading guilty to his 2015 Alabama drug offense, he at no point argued that his guilty plea in the present case was not knowingly and voluntarily entered. The district court, however, recognized *sua sponte* at sentencing that the proffered testimony raised issues not only with respect to the 2015 guilty plea but with respect to the guilty plea in the present case as well. After examining Dr. Griffith's testimony, the court nevertheless concluded that "the guilty plea in this

17

case, as the Court found at the plea hearing, was knowingly and voluntarily entered." The court explained that Dr. Griffith's testimony indicated that Cheeks could understand information told to him by his attorney, including the consequences of a plea. Thus, not only did the district court question Cheeks specifically about the appeal waiver at his plea colloquy, it took into account testimony Cheeks presented after the fact on a different issue and still determined that the plea and appeal waiver were knowingly and voluntarily entered. In such circumstances, we have little difficulty concluding that the appeal waiver was knowingly and voluntarily entered under *Bushert*.

Cheeks also argues that even if the appeal wavier is valid, his appeal falls outside the scope of the appeal waiver because the district court imposed a sentence above the sentencing Guideline range. Cheeks contends that the applicable sentencing Guideline range was 140 to 175 months instead of the 240-month statutory mandatory minimum that the PSI and the district court said constituted the applicable Guideline term. According to Cheeks, his 180-month sentence is thus above the Guideline range. The problem for Cheeks is that the appeal waiver exception on which he relies applies to "[a]ny sentence that constitutes an upward departure from the advisory guideline sentencing range *calculated by the court at the time sentence is imposed*." (emphasis added). At the time of sentencing, the district court calculated the Guideline term as 240 months.

18

Cheeks's 180-month sentence[4] does not constitute an upward departure from the court's calculation. Accordingly, his appeal waiver bars us from considering this issue.

## III. CONCLUSION

We affirm the denial of the motion to suppress. We otherwise dismiss the appeal based on the valid appeal waiver.

**AFFIRMED IN PART AND DISMISSED IN PART.**

---

[4] The district court had statutory authority to impose a sentence lower than the mandatory minimum based on the substantial-assistance reduction available in 18 U.S.C. § 3553(e).